

# In the Court of Criminal Appeals of Texas

No. WR-92,780-01

EX PARTE VIRGIL WORSHAM, JR.,

*Applicant*

On Application for a Writ of Habeas Corpus
Cause No. 23,261-2017A in the 402nd District Court
From Wood County

YEARY, J., delivered a dissenting opinion, in which SLAUGHTER, J., joined.

Today the Court grants post-conviction habeas corpus relief based on Applicant's claim that his trial counsel was ineffective for failing to file a motion to suppress evidence. I dissent to the Court's grant of relief, believing it to be supported by no evidence at all.

Applicant alleges that the firearm which was the basis for his plea

of guilty to the third-degree felony offense of unlawful possession of a firearm was obtained during a warrantless search in violation of the Fourth Amendment. U.S. CONST. amend. IV. Law enforcement obtained the firearm from inside a backpack found in Applicant's impounded vehicle during an inventory search. Applicant alleges that, if his trial counsel had filed a motion to suppress the firearm evidence, the trial court would have granted the motion and Applicant would not have pled guilty.

The record of this case, even after remand, is too sparse to support the convicting court's findings and conclusions recommending that the Court grant relief. The United States Supreme Court has explained that a successful ineffective assistance of counsel claim requires an applicant to show that his counsel's performance was deficient and that his defense was prejudiced by that deficiency. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). For Applicant, who pled guilty, the prejudice prong asks whether "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

The record simply does not contain enough information to responsibly answer either the deficient performance or the prejudice prong of the *Strickland/Hill* test in Applicant's favor. Even the most thorough reading of the record leaves gaping holes in this Court's knowledge about what occurred and what would have occurred if counsel had acted differently. When utilizing the late-stage procedural tool of a post-conviction application for a writ of habeas corpus, it is the Applicant's burden to fill these holes. *Ex parte Maldonado*, 688 S.W.2d

114, 116 (Tex. Crim. App. 1985). An Applicant cannot fill these holes with just anything—like unsupported allegations. Applicant has the burden to *prove* his allegations with *actual evidence*. As will be discussed below, Applicant did not meet this burden. Instead of granting relief despite Applicant's failure to prove his claims, the Court should once again remand to the convicting court for further development of the record, or simply deny relief.

## I. THE SPARSE WRIT RECORD

When first presented with Applicant's allegations, this Court decided that since he had alleged facts which, *if proven true*, might entitle him to relief, the record should be developed on remand. We directed the convicting court to order trial counsel to respond to Applicant's allegations and instructed that, "[i]n developing the record, the trial court may use any means set out in Article 11.07, § 3(d)." *Ex parte Worsham*, No. WR-92,780-01, 2021 WL 2674535, at *1 (Tex. Crim. App. June 30, 2021) (not designated for publication). Applicant's plea counsel did not respond to the convicting court's order. The State, likewise, never responded to Applicant's allegations. Since Applicant pled guilty and never filed a direct appeal, there is no record of trial level proceedings for us to consider. No hearing appears to have been held on Applicant's habeas claims. And no *new* affidavits seem to have been obtained from anyone with knowledge of relevant facts in response to Applicant's habeas allegations. Without any of those potential sources of evidence, the record consists only of the following:

> 1) introductory documents such as the clerk's record cover sheet, the clerk's summary sheet, and the writ docket sheet;

2) Applicant's indictment for unlawful possession of a firearm;

3) the judgment of conviction by the trial court and Applicant's waiver of a jury trial;

4) a letter from the district clerk notifying Applicant of the status of his writ application; and

5) the Application for Writ of Habeas Corpus itself, with Applicant's attachments, including:

> 5a. the affidavit for probable cause to arrest Applicant for unlawful possession of a firearm;

> 5b. a letter written by Applicant to the trial court complaining that trial counsel was not reviewing discovery with Applicant;

> 5c. Applicant's plea papers; and

> 5d. documents detailing trial counsel's unrelated professional misconduct committed before representing Applicant, including a judgment of probated suspension in Texas and an order of disbarment in California.

Considering all the means for developing the record set out in Article 11.07, Section 3(d), there are quite a few obvious sources of information that do not appear on this short list. TEX. CODE CRIM. PROC. art. 11.07 § 3(d). For example, had a habeas corpus hearing been held, the record could have included testimony from various individuals with potentially helpful information regarding the legality of the vehicle search, such as the officers on the scene or the woman involved in the

domestic disturbance with Applicant to which officers were responding before seizing and searching Applicant's vehicle. In lieu of a full evidentiary hearing, affidavits from these individuals could have provided answers. But as the list above shows, the only affidavit included is the one showing probable cause to charge Applicant with unlawful possession of a firearm.

## II. APPLICANT'S BURDEN

This proceeding is a post-conviction application for the writ of habeas corpus, not a pre-trial motion to suppress evidence. In this kind of proceeding, it is the *applicant's* burden to not only *allege*, but also to *prove* facts which entitle him to relief. *Maldonado*, 688 S.W.2d at 116. This means that Applicant must allege and prove both that counsel performed deficiently, by not filing a motion to suppress evidence of the firearm, and that he was prejudiced by that failure. *Strickland,* 466 U.S. at 687. Because he pled guilty, in order to show prejudice, Applicant must prove that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

The allocation of burdens would have been different at an earlier procedural stage. For example, in a pre-trial motion to suppress evidence based on a Fourth Amendment violation, the defendant would bear the initial burden to rebut the presumption of proper police action by showing that a search occurred without a warrant. Then the burden would shift to the State to prove that the search otherwise complied with the Fourth Amendment. *State v. Martinez*, 569 S.W.3d 621, 624 (Tex. Crim. App. 2019). At the post-conviction stage, however, the State has

no burden to disprove Applicant's entitlement to relief. *Maldonado*, 688 S.W.2d at 116.

It appears from the convicting court's findings and conclusions that neither the State nor Applicant's counsel responded to Applicant's ineffective counsel allegations. But their failure to respond does not amount to evidence supporting Applicant's claims. Even when the State fails utterly to respond to an application for writ of habeas corpus, nothing authorizes a convicting court to enter a default judgment granting relief based on an Applicant's pleadings alone. *Cf. Allen v. Perini*, 424 F.2d 134, 138 (6th Cir. 1970) ("The burden to show that he is in custody in violation of the Constitution of the United States is on the prisoner. [citations omitted] The failure of State officials to file a timely return does not relieve the prisoner of his burden of proof. Default judgments in habeas corpus proceedings are not available as a procedure to empty State prisons without evidentiary hearings.").

Not only does the State *not* have a burden to affirmatively disprove anything, our statutory law explicitly provides that "[m]atters alleged in the application not admitted by the state are deemed denied." TEX. CODE CRIM. PROC. art. 11.07 § 3(b). So, the fact that the State did not respond to Applicant's allegations does nothing to help Applicant meet his burden of proof. *See Ex parte Empey*, 757 S.W.2d 771, 775 (Tex. Crim. App. 1988) (holding that even though the writ applicant's allegations were made under oath and were not contested by the State, they were deemed denied when not admitted by the State and therefore did not entitle the applicant to release absent the applicant meeting his burden of proving those allegations).

And neither does it satisfy Applicant's burden of proof simply to show that his trial counsel is a crummy lawyer in general. A showing must be made that counsel performed deficiently and caused resulting prejudice as a result of his actions in the particular case at issue. *Strickland,* 466 U.S. at 690 ("[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."). Applicant has attached documents to his writ application showing that his counsel was recommended for disbarment by the State Bar Court of California and that he has in the past been ordered to serve a probated suspension by the State Bar of Texas. But nothing in the record suggests he was suspended by the State Bar of Texas at the time of Applicant's plea. And this Court has previously determined that *Strickland*'s presumption of effective assistance still applied even in a case involving a lawyer whose license to practice law in Texas was suspended *at the time of his trial. See Cantu v. State*, 930 S.W.2d 594, 603 (Tex. Crim. App. 1996) (remanding to the court of appeals to be evaluated under the *Strickland* standard). Accordingly, even if we were to consider the documents submitted by Applicant to be sufficiently authenticated, the evidence of counsel's recommended disbarment in California and probated suspension in Texas does not get Applicant over the threshold of his burden.

The only thing that can help Applicant satisfy his burden is *evidence* of the alleged facts which, if true, entitle him to relief. But the trial court largely supports its findings of fact in this case by reference to Applicant's writ application itself. There was no hearing. No

witnesses were called. No *new* affidavits were filed. In fact, the convicting court cites only *two* documents in its findings of fact and conclusions of law: (1) the affidavit for probable cause to charge Applicant with unlawful possession of a firearm, and (2) the writ application itself.

The convicting court should have done more to allow Applicant to develop a record that would show whether Applicant is entitled to relief, such as hold an evidentiary hearing during which the parties could have called the officers to testify to reveal any potential justifications for the inventory search of Applicant's vehicle. Applicant may very well be correct that there was no legal justification for their actions, and he may ultimately be entitled to relief. But we cannot simply take his word for it.

Applicant's writ application is not evidence. It contains nothing more than allegations—it is a pleading. On its own, it does nothing to advance or satisfy Applicant's burden of proof. *See Ex parte Thomas*, 65 Tex. Crim. 537, 538, 145 S.W. 601, 602 (1912) ("Certainly the application for a writ of habeas corpus, in and of itself, is not evidence of any of the allegations therein stated; but it is a mere pleading. These allegations must be proven, the same as any other allegations, in order to entitle the party to the relief sought."); *Ex parte Barganier*, 113 Tex. Crim. 495, 496, 23 S.W.2d 365, 365 (1929) ("The averments in the application cannot be treated as a substitute for evidence.")*; Ex parte Ambrose*, 145 Tex. Crim. 582, 583, 170 S.W.2d 731, 732 (1943) ("The application for the writ, although sworn to, is but a pleading and does not prove itself."); *Ex parte Garcia*, 353 S.W.3d 785, 789 (Tex. Crim. App. 2011) ("Sworn

pleadings provide an inadequate basis upon which to grant relief in habeas actions. It is beyond dispute, though, that relief may be granted on the basis of testimony that supports the pleadings, if that testimony is believed by the habeas court."); *State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013) ("[I]n all habeas cases, sworn pleadings are an inadequate basis upon which to grant relief[.]").

## III. APPROPRIATE DEFERENCE TO THE CONVICTING COURT

In granting relief to Applicant today, this Court agrees with the convicting court's findings of fact and conclusions of law and its ultimate recommendation. We have previously said that, in litigation under Article 11.07 of our Code of Criminal Procedure (Felony Post-Conviction Habeas Corpus), fact findings made by the convicting court are entitled to great deference. *Cf. Ex parte Van Alstyne*, 239 S.W.3d 815, 817 (Tex. Crim. App. 2007) ("[A]s a matter of course [the Court of Criminal Appeals] pays great deference to the convicting court's recommended findings of fact and conclusions of law[.]"). And this ordinary deference makes sense—as Judge Cochran memorably explained, the convicting court is "Johnny–on–the–Spot" in post-conviction habeas corpus litigation, with the means to gather and develop evidence and in a better position than this Court to consider that evidence up close and personal as the "original" factfinder. *Ex parte Simpson*, 136 S.W.3d 660, 668–69 (Tex. Crim. App. 2004).

But this well-deserved deference is not absolute. The critical caveat to the norm of deference is that the convicting court's findings must be supported by the record. *See Ex Parte Navarijo*, 433 S.W.3d 558, 567 (Tex. Crim. App. 2014) ("This Court *ordinarily* defers to the habeas

court's fact findings . . . *when those findings are supported by the record.*") (emphasis added); *Van Alstyne*, 239 S.W.3d at 817 (holding that "great deference" to the convicting court's recommendations is appropriate "*as long as they are supported by the record*") (emphasis added). This Court, while not the original factfinder, is the "ultimate" factfinder, with "the statutory duty to review the convicting court's factual findings and legal conclusions to ensure that they are supported by the record and are in accordance with the law." *Navarijo*, 433 S.W.3d at 567. When this Court finds, through its independent review of the record, that the convicting court's recommended findings and conclusions are not supported by the record, it has the authority to make contrary or alternative findings of its own. *Ex parte Harleston*, 431 S.W.3d 67, 70–71 (Tex. Crim. App. 2014).

The record of proceedings on this application for a writ of habeas corpus is one of those in which the norm of deference to the convicting court's findings should not apply—at least, not yet. The record contains too many unknowns to be able to connect the dots from key findings and conclusions back to actual evidence. I will review just a few examples of the convicting court's findings which I believe demonstrate the fatal paucity of support for them in the record.

Convicting court finding of fact Number 6 states: "At no time was Applicant's vehicle observed on a public roadway." Trial Court's Findings of Fact and Conclusions of Law, Supplemental Clerk's Record, at 8. But no officer has ever said that—at least no evidence shows they did. All that the record reveals about the specific location of Applicant's vehicle is what is contained within the arresting officer's affidavit and

the writ application itself. The writ application claims that Applicant's vehicle was on "private property" and that it was "parked in his private driveway on private property at his residence." Writ Application Form, Clerk's Record, at 14. It claims that "[t]he vehicle was not part of a traffic stop, nor was Applicant near or attempting to drive the vehicle out of the driveway." *Id*. But the arresting officer's affidavit to show probable cause to charge Applicant with unlawful possession of a firearm states that he had been called to the location to investigate a disturbance involving Applicant and another person and that, when Applicant was first observed by officers, he was "on the east side of the property on foot walking east toward his vehicle." Affidavit for Probable Cause, Clerk's Record, at 128. Only Applicant's bare assertions in his writ application support the convicting court's finding about the location of Applicant's vehicle.

The convicting court's findings also explicitly rely on the *absence* of evidence, which, of course, is no evidence at all. See, for example, finding of fact Number 9. Finding Number 9 explains that "[t]here is no evidence that the shotgun or any other weapon was used or exhibited during the alleged domestic disturbance." Trial Court's Findings of Fact and Conclusions of Law, Supplemental Clerk's Record, at 9. But the record does not include any specific information about the domestic disturbance the officers were responding to when they arrived at the location where Applicant was found, aside from naming the other person involved in the disturbance.

In another example of explicit reliance on the absence of evidence, finding Number 19 says that "[t]here is no evidence before this Court

showing that impoundment of Applicant's vehicle was lawful."[1] Trial Court's Findings of Fact and Conclusions of Law, Supplemental Clerk's Record, at 9. As the convicting court notes, even a vehicle parked on private property may be lawfully impounded if the reason for impoundment serves the police's community-caretaking function. Trial Court's Findings of Fact and Conclusions of Law, Supplemental Clerk's Record, at 7 (citing *United States v. Sanders*, 796 F.3d 1241 (10th Cir. 2015)); *see also South Dakota v. Opperman*, 428 U.S. 364, 368 (1976) (explaining that police may conduct a warrantless inventory search on a lawfully impounded vehicle and elaborating on the community-caretaking justification for vehicle impoundment). For example, a vehicle may be lawfully impounded if it poses a risk to public safety or if it will pose a hazard if left where police found it. *Opperman,* 428 U.S. at 368. Numerous other reasons may also exist that could justify the police action in this case. *See, e.g.*, *Benavidez v. State*, 600 S.W.2d 809, 811–12 (Tex. Crim. App. 1980) (listing several justifications for lawful vehicle impoundment, such as when there is "some reasonable connection between the arrest and the vehicle"). At present, however, the record evidence in this case sheds no light on why the officers impounded Applicant's vehicle, and no evidence shows that it was

---

[1] The convicting court, at least on habeas, should have presumed the impoundment to be lawful until Applicant proved it was not! *See Ex parte Rocha*, 482 S.W.2d 169, 170 (Tex. Crim. App. 1972) (denying relief in a case in which the applicant alleged that his counsel performed deficiently by failing to timely file a notice of appeal—where he relied only on his own testimony to support his claim since his counsel was deceased—and explaining that, "[i]n a habeas corpus proceeding, a petitioner bears the burden of overcoming the presumption of regularity of the judgment by showing that there is substantial evidence to the contrary").

unlawfully impounded.

Testimony from the arresting officers during a hearing, had one been held on Applicant's habeas application, might have revealed whether any proper concerns may have justified the impoundment and subsequent inventory search of Applicant's vehicle, or whether those actions were improper. But by relying only on Applicant's claims in his writ application, and otherwise on the absence of evidence to rebut Applicant's claims, the convicting court's findings shift the burden to the State to show that the vehicle impoundment was lawful rather than placing the burden in post-conviction habeas proceedings properly on Applicant to prove the impoundment was *unlawful*.

## IV. CONCLUSION

Applicant may ultimately demonstrate that he is indeed entitled to post-conviction habeas corpus relief. Or maybe, when put to his proof, his evidence will fail. But the record simply does not presently provide enough evidence to answer the question objectively one way or the other. Again, it is Applicant's burden to present the evidence.[2] This Court could, under these circumstances, simply deny relief. But I see no reason in this case not to remand the case again to the convicting court for further fact development, at which time Applicant could be given another, or perhaps his first, opportunity to meet his burden.

What I would not do at this juncture is simply grant relief.

---

[2]Applicant might be able to prove he was prejudiced by his counsel's failure to pursue a motion to suppress by showing that (1) the impoundment and subsequent inventory search of his vehicle were unlawful, (2) that the trial court most likely would have granted a motion to suppress the firearm, and (3) that Applicant would not then have pled guilty, but rather would have insisted on going to trial. *Hill*, 474 U.S. at 59.

Because the Court does so, on the basis of literally no supporting evidence at all, I respectfully dissent.

**FILED:**                                              December 7, 2022
**PUBLISH**